# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIE SMITH** | **CIVIL ACTION** |
| **versus** | **NO. 08-4627** |
| **JEFFERY TRAVIS** | **SECTION: "J" (1)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Willie Smith, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center, Angie, Louisiana.  On May 25, 2004, he was convicted of two counts of distribution of cocaine in violation of Louisiana law.[1]  On July 2, 2004, he was sentenced on each

---

[1] State Rec., Vol. IV of VI, transcript of May 25, 2004, p. 129; State Rec., Vol. I of VI, minute entry dated May 25, 2004; State Rec., Vol. I of VI, jury verdict form.

count to a term of twenty years imprisonment. It was ordered that his sentences run concurrently and that the first two years be served without benefit of parole, probation, or suspension of sentence.[2] On October 29, 2004, he was found to be a second offender,[3] and, on December 3, 2004, he was resentenced as such on the first count to a concurrent term of thirty years imprisonment. It was ordered that the enhanced sentence be served without benefit of probation or suspension of sentence and, additionally, that the first two years of the sentence be served without benefit of parole.[4] On October 6, 2005, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's convictions and sentences.[5] The Louisiana Supreme Court then denied his related writ application on September 1, 2006.[6]

---

[2] State Rec., Vol. IV of VI, transcript of July 2, 2004, pp. 13-14.

[3] State Rec., Vol. IV of VI, transcript of October 29, 2004, p. 15; State Rec., Vol. I of VI, minute entry dated October 29, 2004; see also State Rec., Vol. I of VI, Reasons dated December 3, 2004.

[4] State Rec., Vol. IV of VI, transcript of December 3, 2004, p. 15; State Rec., Vol. I of VI, minute entry dated December 3, 2004.

[5] State v. Smith, No. 05-KA-203 (La. App. 5th Cir. Oct. 6, 2005) (unpublished); State Rec., Vol. II of VI.

[6] State v. Smith, 936 So.2d 195 (La. 2006) (No. 2006-KO-0248); State Rec., Vol. II of VI.

On September 18, 2006, petitioner filed with the state district court an application for post-conviction relief.[7] That application was denied on March 16, 2007.[8] Petitioner's related writ application was denied by the Louisiana Fifth Circuit Court of Appeal on May 16, 2007.[9]

While that application was pending, petitioner filed with the state district court a motion to amend or modify sentence[10] and a pleading entitled "Exception for Motion and Order to Set a Contradictory Hearing." Those motions were denied on April 20, 2007.[11]

On July 5, 2007, petitioner filed with the state district court a "Motion to Re-evaluate Basis for Sentence Due to Inadvertent Sentencing Error."[12] That motion was denied on March 7, 2008.[13]

---

[7] State Rec., Vol. II of VI. That application was stamped as filed by the clerk of court on September 22, 2006. However, the United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a state court filing, and so such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Petitioner's application was dated September 18, 2006; therefore, that is the earliest date it may be considered "filed."

[8] State Rec., Vol. II of VI, Order dated March 16, 2007. When that denial was issued, the state district court judge was unaware that, on February 27, 2007, petitioner had filed a traverse to the state's opposition to his application. In that traverse, he requested that the court hold an evidentiary hearing on his application. That request was denied on May 2, 2007. State Rec., Vol. II of VI, Order dated May 2, 2007.

[9] State *ex rel.* Smith v. E.M., No. 07-KH-316 (La. App. 5th Cir. May 16, 2007) (unpublished); State Rec., Vol. II of VI.

[10] State Rec., Vol. II of VI.

[11] State Rec., Vol. II of VI, Orders dated April 20, 2007.

[12] State Rec., Vol. II of VI.

[13] State Rec., Vol. II of VI, Order dated March 7, 2008.

On March 16, 2008, petitioner filed with this Court a federal petition for *habeas corpus* relief. That application was dismissed without prejudice on August 26, 2008.[14] Petitioner did not appeal that dismissal.

On or about August 14, 2008, after it was discovered that the Louisiana Fifth Circuit Court of Appeal had for many years used an improper procedure to deny *pro se* post-conviction writ applications, petitioner filed with the Louisiana Supreme Court a petition for a writ of certiorari seeking relief.[15] On October 10, 2008, that application was transferred to the Louisiana Fifth Circuit Court of Appeal for consideration pursuant to the procedures outlined in State v. Cordero, 993 So.2d 203 (La. 2008).[16] That application is apparently still pending.

On or about September 19, 2008, petitioner filed the instant federal application for *habeas corpus* relief.[17] The state contends that petitioner's application is subject to dismissal both because it is untimely and because he failed to exhaust his state court remedies.[18] For the following reasons, this Court rejects those contentions.

---

[14] Smith v. Travis, Civ. Action No. 08-1539, 2008 WL 3992677 (E.D. La. Aug. 26, 2008).

[15] Supplemental State Rec., Vol. I of I.

[16] State *ex rel.* Smith v. State, 993 So.2d 1258 (La. 2008) (No. 2008-KH-2281); Supplemental State Rec., Vol. I of I.

[17] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). This Court is unable to determine the date on which that occurred in this case. The application was undated and was mailed in an envelope without a legible postmark. However, it was received by the Clerk of Court on September 19, 2008.

[18] Rec. Doc. 9.

## Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[19]

As noted, the Louisiana Supreme Court denied petitioner's writ application on direct review on September 1, 2006. Therefore, under § 2244(d)(1)(A), his conviction became "final" on November 30, 2006, when his period expired for seeking a writ of certiorari from the United States Supreme Court. See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Chester v. Cain, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); see also U.S. Sup. Ct. R. 13(1). Accordingly, petitioner's one-year period for seeking federal *habeas corpus* relief would normally have commenced on that date.

However, the AEDPA also provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). As of November 30, 2006, the date on which the one-year period would normally have commenced, the limitations period had already been tolled by petitioner's filing of his state post-conviction application on September 18, 2006. Although that application was denied, tolling continued uninterrupted for the duration of the post-conviction process, so long as petitioner sought

---

[19] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

review in a timely manner.  Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70

(5th Cir. 2004).  Here, tolling ended upon the expiration of petitioner's thirty-day period for seeking

timely review of the Louisiana Fifth Circuit Court of Appeal's judgment of May 16, 2007.  Id. at

770-71 ("[A] state application ceases to be pending when the time for appellate review expires.");

Louisiana Supreme Court Rule X, § 5(a) (a litigant has only thirty days to file a writ application to

challenge a judgment of a Louisiana intermediate appellate court).[20]  Accordingly, the Court finds

that tolling ceased, and the federal limitations period therefore commenced, on June 15, 2007.

Nineteen (19) days of the limitations period then elapsed before again being tolled

on July 5, 2007, by petitioner's filing of the "Motion to Re-evaluate Basis for Sentence Due to

---

[20]    The state contends that tolling is not warranted for petitioner's filing with the Louisiana Fifth
Circuit Court of Appeal because he captioned that *pro se* filing as an application for a writ of
"mandamus."  In support of that contention, the state cites Moore v. Cain, 298 F.3d 361 (5th Cir.
2002).  In Moore, the United States Fifth Circuit Court of Appeals held that a true application for
a writ of mandamus, i.e. an application seeking an order compelling action rather than review of a
judgment, does not entitle a petitioner to tolling under § 2244(d)(2).  However, the Court of Appeals
made clear that its ruling was based on the fact that the filing at issue did not challenge the
petitioner's underlying criminal judgment.  Id. at 367 ("For our purposes, the key inquiry is whether
[petitioner's] mandamus application sought 'review' of the judgment pursuant to which he is
incarcerated.");  see also Hutson v. Quarterman, 508 F.3d 236, 238 (5th Cir. 2007).  Here, despite
the manner in which he captioned his *pro se* filing, petitioner was not in fact seeking a true writ of
mandamus.  Rather, it is clear from the filing, which is included in Volume V of the state court
record, that petitioner was seeking review of the trial court's denial of his post-conviction
application.  Moreover, the Louisiana Fifth Circuit Court of Appeal did not construe the application
as one seeking a writ of mandamus.  Instead, that court construed the application as one seeking a
supervisory writ, and the court denied that application on the merits, holding:  "On the presentation,
the application discloses no error in the trial court's ruling of March 16, 2007 on relator's
Application for Post Conviction Relief."  State ex rel. Smith v. E.M., No. 07-KH-316 (La. App. 5th
Cir. May 16, 2007) (unpublished); State Rec., Vol. II of VI.  In light of the foregoing, this Court
finds that tolling is warranted based on the filing and that Moore does not dictate otherwise.
Nevertheless, even if petitioner were not given tolling credit for that application, his federal
application would *still* be timely.

Inadvertent Sentencing Error."  Although that motion was denied on March 7, 2008, tolling continued until April 7, 2008, when petitioner's thirty-day period for seeking timely review of that judgment expired.  <u>See</u> Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; <u>see also</u> <u>Melancon v. Kaylo</u>, 259 F.3d 401, 404-06 (5th Cir. 2001); <u>Campbell v. Cain</u>, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007).[21]

Another one hundred twenty-eight (128) days of the limitations period then elapsed before again being tolled on August 14, 2008, by petitioner's filing of the Louisiana Supreme Court writ application.[22]  As noted, that application has been transferred to the Louisiana Fifth Circuit Court of Appeal and currently remains pending.  Therefore, the federal limitations period has remained tolled since that application was filed on August 14, 2008.

In light of the foregoing, this Court finds that only one hundred forty-seven (147) days of the one-year federal limitations period had expired when petitioner filed the instant federal application on September 19, 2008.  Accordingly, the application was timely filed.

<div align="center">Exhaustion</div>

Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his remedies in state court before seeking *habeas corpus* relief from the federal courts.  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  <u>Wilder v.</u>

---

[21]  Because the thirtieth day of the period fell on a Sunday, petitioner had until the following Monday, April 7, 2008, to file a writ application in the Court of Appeal.  <u>See</u> La.C.Cr.P. art. 13; La.Rev.Stat.Ann. § 1:55.

[22]  The Court notes that the limitations period was not tolled by petitioner's filing of his prior federal *habeas corpus* application.  <u>Duncan v. Walker</u>, 533 U.S. 167, 172 (2001); <u>*In re* Wilson</u>, 442 F.3d 872, 876 n.5 (5th Cir. 2006).

Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Generally, the exhaustion requirement is satisfied when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).

In his federal application, petitioner asserts the following claims:

1.  The trial court erred in denying petitioner's motion for mistrial and in failing to grant his motion for new trial based on the state's failure to inform the defense of a videotape of the crime introduced at trial;

2.  Petitioner was sentenced in violation of La.C.Cr.P. art. 894.1 and the Sixth Amendment to the United States Constitution; and

3.  The prosecution improperly withheld the videotape of the crime in violation of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.

In petitioner's prior *habeas corpus* proceeding, this Court found that those claims were exhausted because petitioner presented them to the Louisiana Supreme Court in his writ applications in case number 2006-KO-0248 . Smith v. Travis, Civ. Action No. 08-1539, 2008 WL 3992677 (E.D. La. Aug. 26, 2008). The Court is still of that same opinion.

Accordingly, because the Court finds that petitioner's federal application was timely filed and that he exhausted his state court remedies, petitioner's claims will now be considered.

<u>Standard of Review</u>

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

> In August of 2002, Officer Veronica Gordon of the Jefferson Parish Sheriff's Office was assigned to the Narcotics Division and was working in an undercover capacity in a vehicle equipped with a video camera and an audio transmitter. Officer Gordon testified that, on August 13, 2002 at approximately 3:00 p.m., she purchased two rocks of cocaine from an individual, later identified as the defendant, on the corner of Elm Street and Mistletoe Street. The next day, August 14, 2002, Officer Gordon encountered defendant on North Elm Street at approximately 2:30 p.m. Defendant told her to drive around the block, where she purchased two more rocks of cocaine from him. As on the day before, this transaction took place behind the officer's car, defendant was on the same black bicycle and defendant headed toward North Elm Street once the transaction was complete.[FN]

> > [FN] The video recordings from August 13th and August 14th were admitted into evidence and played for the jury.

> Later that evening, Officer Gordon returned to the area to identify the individual from whom she had purchased narcotics. After observing defendant on North Elm Street on his bicycle wearing the same clothing as earlier, she broadcast his description and location over the police radio. Approximately three minutes later, Agent Corey Wilson responded to the location Officer Gordon had described. Agent Wilson saw an individual, later determined to be defendant, who matched Officer Gordon's description. Agent Wilson exited his vehicle and identified himself as a narcotics agent. When Agent Wilson asked defendant if he could speak with him, defendant walked toward the officer's car. Thereafter, defendant supplied his name, address and other personal information in response to Agent Wilson's questions.

Approximately one week later, Officer Gordon identified defendant from a photographic lineup. At trial, Officer Gordon testified that there was no doubt in her mind that defendant was the person who sold narcotics to her on August 13, 2002 and August 14, 2002. According to Andrea Travis, an expert forensic scientist, the purchased materials tested positive for the presence of cocaine.[23]

## Videotape

Petitioner's first claim is that the trial court erred in denying his motion for mistrial and in failing to grant his motion for new trial based on the state's failure to inform the defense of a videotape of the crime introduced at trial. On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

> Defendant contends the trial judge erred in denying his motions for a mistrial and for a new trial that were made on the basis that the State violated discovery procedures by failing to provide defendant with a copy of the August 14, 2002 videotape. According to defendant, he was prejudiced because the tape bolstered the State's proof of identification because of Officer's Gordon's remarks that defendant was the same person from whom she had purchased cocaine on the prior day and should have been provided to the defendant. The State responds that defendant failed to preserve this issue for review. The State further responds defendant's contention has no merit because no discovery violation occurred, considering defendant had knowledge of the videotape. Nevertheless, the State argues that defendant is not entitled to relief because he cannot demonstrate any prejudice.
>
> Criminal discovery rules are intended to eliminate unwarranted prejudice that arises from surprise testimony and evidence in order to permit the defense to respond to the State's case and allow the defense to properly assess the strength of the State's case. State v. Williams, 03-942 (La. App. 5 Cir. 1/27/04), 866 So.2d 1003, 1010, writ denied, 04-0450 (La. 6/25/04), 876 So.2d 832. Upon motion of the defendant, La. C.Cr.P. art. 718 provides for

---

[23] State v. Smith, No. 05-KA-203, at pp. 3-4 (La. App. 5th Cir. Oct. 6, 2005) (unpublished); State Rec., Vol. II of VI.

discovery of documents and tangible evidence within the State's possession, custody or control when the items sought are (1) favorable to the defendant and material and relevant to his guilt or punishment, (2) are intended for use by the State as evidence at trial, or (3) were obtained from or belong to the defendant. State v. Williams, supra.

La. C.Cr.P. art. 729.5 provides for sanctions where a party has failed to comply with discovery requirements:

> A. If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such a party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.

However, the State's failure to comply with discovery procedures does not automatically require reversal. State v. Donnaud, 04-624 (La. App. 5th Cir. 2/15/05), 896 So.2d 1151, 1158, citing State v. Sweeny, 443 So.2d 522, 527 (La. 1983[)]. Rather, the appellate court must examine the circumstances of the case to determine whether the defendant was prejudiced and whether any prejudice resulting from the State's non-compliance with discovery procedure caused the trier-of-fact to reach the wrong conclusion. Id.

In this case, defendant filed a written motion for discovery requesting an "[i]nspection of any tangible objects, photographs, or documents which are within the possession, custody or control of the state and which are material to the preparation of the defendant's defense or are intended for use by the prosecuting authority as evidence at trial." While a mistrial is included as one of the sanctions provided by La. C.Cr.P. art. 729.1(A), the record does not reflect that defendant made a mistrial motion.

In fact, the record does not reflect that defendant even objected when the videotape was admitted into evidence or when it was played for the jury. During Officer Gordon's testimony, the prosecutor moved to admit the August 14, 2002 videotape. Defense counsel said he did not have an objection, subject to cross-

examination and then asked to approach the bench where the following took place:

Defense:    Can she say that any of the transaction shows on that tape?

State:      No.

Defense:    Okay. She said no. Because the reports say the videotape didn't show anything, and I just wanted to make sure because I asked for any in discovery, anything that would show –

State:      No, you can't see anything.

Defense:    Okay.

State:      Her testimony was just that she got out of the car and the transaction took place. It doesn't show on the tape.

State:      I'll clear it up before I play it.

The trial judge then admitted the August 14, 2002 videotape into evidence. Before it was played for the jury, Officer Gordon clarified that the narcotics transactions on both dates took place outside of the vehicle and were outside the camera's view. On the videotape, defendant is observed riding past the officer's vehicle on his bike and Officer Gordon states "LNU, FNU, same LNU, FNU as yesterday." At trial, Officer Gordon explained that she meant that the first and last names were unknown, and that it was the same black male who made a narcotic transaction on the day before.

At the end of Officer Gordon's cross examination, there was another bench conference on an unrelated matter where defense counsel mentioned that he would move for a mistrial at some point:

I mean let me tell you, I was told basically, and I don't remember, this case has gone on a long time, and this is just a sideline, but I was told that tape didn't come out for August 14th, that there really was

no tape, and I was not aware that it had all of those comments on it. And it was never supplied to me. So I'm going to move for a mistrial at some point on that basis because I had asked for all videotapes. I had no idea that there was anything recorded on the tape. And when I was, you know, admittedly the report says that there was no video recording that showed up on the tape. I was told by someone that the August 14th tape was essentially useless. And I should have been provided a copy of it before trial. And I was not.

Now, what I got, what I got, was I got a copy of the August 13th tape and a copy of the October 22nd tape, which implied to me that there was nothing on or that actually nothing had come out on the August 14th tape. That's what was given to me.

And I'm not saying either of ya'll had anything to do with that.

Defense counsel reiterated that he asked for all tapes with evidence on them and the August 14th videotape contained verbal evidence of the officer tying the two incidents together. This bench conference ended when the trial judge asked if the parties were finished with the witness, and defendant's cross-examination continued.

The foregoing reflects that defendant never moved for a mistrial. Instead, defendant merely stated his intention to move for a mistrial at some point. As such, there is no ruling on a motion for mistrial for us to review[.]

However, this issue was raised in the supplemental motion for a new trial, which was denied on July 2, 2004. At the hearing on that motion, defense counsel told the court that he was surprised by the State's use of the August 14, 2002 videotape because he was informed by the State's investigator that a tape of the August 14, 2002 incident did not exist or that the tape did not show defendant at all, leading him to conclude the State was not using the tape. Defense counsel further argued that he asked for the tape in discovery and stated that he objected when the subject of the tape came up during trial. According to defense counsel, he would have altered his strategy if he had known that the tape contained audible remarks

referring to defendant as the same person who sold drugs to Officer Gordon on August 13, 2002.

The State responded that it had made both tapes available to the defense to review.  Further, the prosecutor told the court that he had asked defense counsel a week before trial if he had viewed the tapes and that defense counsel indicated that he had seen the tapes. Defense counsel responded that he was given a tape regarding both incidents, but that the tape he was given contained nothing relating to the August 14th incident.  The trial judge denied the new trial motion, remarking that he recalled pre-trial discussions in which defense counsel stated that the defendant believed he could not be identified from the videotapes, which were viewed.

The grounds for a new trial are provided in La. C.Cr.P. art. 851:

> The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
>
> The court, on motion of the defendant, shall grant a new trial whenever:
>
> > (1) The verdict is contrary to the law and the evidence;
> >
> > [(]2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
> >
> > (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
> >
> > (4) The defendant has discovered, since the verdict or judgment of

guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or

(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.

The trial judge maintains sound discretion in ruling on a motion for a new trial and such ruling will be disturbed on appeal only where there is a clear showing of abuse of that discretion. State v. Black, 03-911 (La. App. 5 Cir. 12/30/03), 864 So.2d 836, 840.

After reviewing the supplemental motion for new trial and the argument made on these grounds, it is unclear as to what basis under La. C.Cr.P. art. 851 defendant seeks relief. However, it appears that defense counsel believed he objected at trial on the basis that the State violated its discovery obligation. As such, subsection (2) of La. C.Cr.P. art. 851 might be the basis for defendant's request for a new trial.

Nevertheless, any objection was made after the August 14, 2002 tape was admitted into evidence and played for the jury. Generally, unless objected to at the time of the occurrence, an irregularity or error cannot be availed of after the verdict. See, State v. Simmons, 03-20 (La. App. 5th Cir. 4/29/03), 845 So.2d 1249, 1261 citing LSA-C.Cr.P. art. 841(A). "The purpose of the contemporaneous objection rule is to put the trial judge on notice of the alleged irregularity so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection." State v. Simmons.

In State v. Sanders, 431 So.2d 833, 836 (La. App. 2 Cir. 1983), writ denied, 439 So.2d 1076 (La. 1983), the court declined to consider the defendant's argument on appeal regarding the trial court's denial of his new trial motion made on the basis that the State had violated its discovery obligation by introducing testimony at odds with its pre-trial discovery where defendant failed to contemporaneously object to the testimony at trial.

Even if the State failed to properly comply with defendant's discovery request, reversal is not warranted because there is no showing of prejudice that deprived defendant of a fair trial.[FN] In State v. Donnnaud, 896 So.2d at 1156, this Court held that the defendant suffered no prejudice despite the State's failure to comply with defendant's discovery request by not disclosing certain merchandise found in the defendant's apartment that the State intended to use at trial. The Donnaud court noted that the jury would have learned about the merchandise through trial testimony, even if the merchandise had been excluded. Id. at 1158-1159. The Court also found that the defendant had the ability to cross-examine witnesses regarding the items. Id. at 1159.

> [FN] When a defendant is "lulled into misapprehension of the strength of the State's case" through the failure of the prosecution to timely or fully disclose and the defendant suffers prejudice, basic unfairness results which may constitute reversible error. State v. Harris, 00-3459 (La. 2/26/02), 812 So.2d 612, 617. However, the failure of the State to comply with the discovery procedure will not automatically result in reversal. Rather, the defendant must show prejudice before his conviction will be reversed. Id.

Turning to the instant case, while Officer Gordon's comments on the August 14th videotape identified defendant as the same seller of narcotics on August 13th, the officer's comments on the tape were corroborated by her trial testimony. Thus, the jury would have heard the same information, regardless of whether or not the videotape was admitted into evidence. Therefore, the August 14th videotape was merely cumulative of Detective Gordon's trial testimony. As in Donnaud, defendant had the opportunity of cross-examining the witness about the challenged evidence. Further, defendant has failed to indicate how his defense would have been any different if he had known the contents of the August 14th videotape before trial. Accordingly, we find no merit to this assignment.[24]

---

[24] State v. Smith, No. 05-KA-203, at pp. 5-11; State Rec., Vol. II of VI. The Louisiana Supreme Court denied petitioner's related writ application without assigning additional reasons. State v. Smith, 936 So.2d 195 (La. 2006) (No. 2006-KO-0248); State Rec., Vol. II of VI.

It would appear that petitioner's claim is procedurally barred in light of the state court's finding of default based on his failure to move for a mistrial and to make a contemporaneous objection.  However, because petitioner clearly is not entitled to relief based on his claim in any event, this Court recommends that the claim simply be considered and rejected on the merits.[25]

To the extent that petitioner is arguing that the trial court misapplied *state* law in failing to grant a mistrial or in denying the motion for a new trial, such a claim is not cognizable in this federal *habeas corpus* proceeding.  "'[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'"  Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.  We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law.") (internal citation and quotation marks omitted).  Therefore, even if the state courts in fact misapplied state law, that would be of no moment in this proceeding.  Federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

Moreover, it is evident that there was no *federal* violation.  Petitioner's claims are based on a purported discovery violation.  However, there is no general federal constitutional right

---

[25]  A federal court need not decide whether a claim is procedurally barred if the claim clearly fails on the merits.  Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n.5 (E.D. La. July 30, 2008); Lee v. Cain, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).

to discovery in a criminal case, and, therefore, a claim that a prosecutor violated state discovery rules simply is not cognizable in federal *habeas* review. Weatherford v. Bursey, 429 U.S. 545, 559 (1977); Lorraine v. Coyle, 291 F.3d 416, 441 (6th Cir. 2002); Brooks v. Cain, Civ. Action No. 06-1869, 2007 WL 2990935, at *10 (E.D. La. Oct. 11, 2007); Burns v. Lafler, 328 F.Supp.2d 711, 723 (E.D. Mich. 2004).

Of course, pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, it is a federal constitution violation for a prosecutor to suppress material evidence favorable to the defense. However, for the following reasons, it is evident that there was no such violation in this case.

As a preliminary matter, it must be noted that the videotape at issue was not *favorable* to the defense. It was neither exculpatory nor useful for purposes of impeachment; on the contrary, it was inculpatory. The mere fact that it might have been *helpful* to the defense in preparing for trial is of no moment. See, e.g., Kyles v. Whitley, 514 U.S. 419, 436-37 (1995) ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.").

Moreover, in any event, it cannot be said that the videotape was "suppressed" for two reasons. First, the prosecution is not obligated to provide materials to a defendant's trial counsel where defense counsel could have obtained the materials by exercising reasonable diligence. Rector v. Johnson, 120 F.3d 551, 558-59 (5th Cir. 1997); Kutzner v. Cockrell, 303 F.3d 333, 336 (5th Cir. 2002). In this case, even if the videotape was not furnished to defense counsel, a fact which is

disputed and has *not* been established,[26] he was aware of its existence and it was available for his review at any time. Second, the videotape was produced *at trial*. Where, as here, the evidence at issue came to light during trial in sufficient time for defense counsel to put it to effective use, it was not "suppressed" in violation of <u>Brady</u> and its progeny. <u>See, e.g.</u>, <u>Lawrence v. Lensing</u>, 42 F.3d 255, 257 (5th Cir. 1994); <u>United States v. McKinney</u>, 758 F.2d 1036, 1049-50 (5th Cir. 1985); <u>Stogner v. Cain</u>, Civ. Action No. 05-4317, 2008 WL 269078, at *20 (E.D. La. Jan. 30, 2008); <u>Baker v. Cain</u>, Civ. Action No. 05-3772, 2007 WL 1240203, at *5 (E.D. La. Apr. 26, 2007).

In light of the foregoing, the Court finds that petitioner has not demonstrated that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects that claim.

The Court further notes that petitioner's third claim is simply a variation on his first one. In that related third claim, petitioner argues that the videotape should not have been allowed into evidence because it was improperly withheld by the prosecution in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny. However, having already found that there was no such <u>Brady</u> violation in this case for the reasons stated, the Court need not further address that third claim.

<u>Sentence</u>

Petitioner also claims that he was sentenced in violation of La.C.Cr.P. art. 894.1 and the Sixth Amendment to the United States Constitution. Petitioner's explanation of this claim is

---

[26] <u>See</u> State Rec., Vol. IV of VI, transcript of July 2, 2004, pp. 4-12.

hardly a model of clarity. Arguably, the claim could be interpreted in a number of ways; however, under none of those interpretations does the claim have merit.

To the extent that petitioner is claiming that the state courts failed to apply La.C.Cr.P. art. 894.1 as it was amended by Act No. 22 of the Louisiana Legislature's 1991 Regular Session, that claim is nonsensical. Those 1991 amendments were inapplicable to petitioner's case. Article 894.1 was completely rewritten and reenacted in Act No. 942 of the 1995 Regular Session and was again amended by Act No. 1199 of the 1997 Regular Session.

To the extent that petitioner is claiming that the state courts misapplied the *applicable* version of Article 894.1, that claim is not cognizable. As previously noted, federal *habeas corpus* relief may not be granted for mere errors of state law; rather, such relief may be granted only to remedy violations of federal law. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

To the extent that petitioner is claiming that his rights under the Sixth Amendment were violated by the trial judge's enhancement of the sentence based on his determination of a fact not submitted to a jury, that claim is meritless. Petitioner's sentence was enhanced based solely on the fact that he was second offender, and a judge may determine the fact of a prior conviction to enhance a criminal defendant's sentence without submitting that issue to a jury. Blakely v. Washington, 542 U.S. 296, 301 (2004); Apprendi v. New Jersey, 530 U.S. 466, 490 (2000); Buckley v. Butler, 825 F.2d 895, 904 n.3 (5th Cir. 1987); Williams v. Cain, Civ. Action No. 05-0710, 2008 WL 3363562, at *18-19 (E.D. La. Aug. 8, 2008); Pierce v. Cain, Civil Action No. 06-2117, 2008 WL 1766998, at *18 (E.D. La. Apr. 15, 2008).

Lastly, to the extent that petitioner is arguing that his sentence is excessive, that claim also fails. On direct appeal, the Louisiana Fifth Circuit Court of Appeal held:

> Defendant argues that his thirty-year sentence was unconstitutionally excessive because the trial judge failed to take into account the weak identification evidence in this case and the fact that he needed mental health treatment for rehabilitation.[FN] The State responds that the record demonstrates that the trial judge did not impose an excessive sentence.

> [FN] Defendant only seeks review of his enhanced thirty-year sentence in this assignment.

> While defendant challenged his sentence as excessive, his motion did not urge any particular basis upon which the claim of excessiveness was based. The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence for constitutional excessiveness. State v. Dupre, 03-256 (La. App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La. 5/14/04), 872 So.2d 509.

> The Eighth Amendment of the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La. 1992). Trial judges have great discretion in imposing sentences and such sentences will not be set aside as excessive absent clear abuse of that broad discretion. State v. Allen, 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 879.

> In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing the sentence. State v. Allen, supra. There is no requirement that specific matters be given any particular weight at sentencing. State v. Tracy, 02-0227 (La. App. 5 Cir. 10/29/02), 831 So.2d 503, 516, writ denied, 02-2900 (La. 4/4/03), 840 So.2d 1213. In reviewing a trial judge's sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the

sentence imposed for similar crimes by the same court and other courts.  Id. at 880.  The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed.  State v. Uloho, 04-55 (La. App. 5 Cir. 5/26/04), 875 So.2d 918, 933, writ denied, 04-1640 (La. 11/19/04), 888 So.2d 192.

Distribution of cocaine is punishable by imprisonment of not less than two years nor more than thirty years, with the first two years to be served without benefit of parole, probation, or suspension of sentence.  La. R.S. 40:967(B)(4)(b).  As a second felony offender, defendant was exposed to a sentencing range between fifteen and sixty years.[FN4] Defendant received an enhanced sentence of thirty years, to be served without benefit of probation or suspension of sentence, two years of which was to be served without benefit of parole, probation, or suspension of sentence.

> [FN4]  According to La. R.S. 15:529.1(A)(1)(a),
>
> > [i]f the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then he sentence of imprisonment shall be for a determinate term not less that [sic] one-half the longest term and not more than twice the longest term prescribed for a first conviction.

Before imposing the enhanced sentence, the trial judge noted that defendant had been convicted of two counts of distribution of cocaine and that he had previously pled guilty to armed robbery.  The trial judge noted defendant's display of belligerence and lack of remorse.    However, the judge also considered defendant's representations that he had been treated at various mental institutions and defendant's youth.[FN5] The trial judge expressed his belief that there was some hope for defendant and the judge believed the thirty-year enhanced sentence was a "big concession."[FN6]  Thus, the record reflects that the trial judge fashioned an individualized sentence, taking into account the present offense, defendant's criminal history, and his personal circumstances.

[FN5]  The record reflects that defendant was 28 years-old at sentencing.

[FN6]  It is noted that the record reflects that defendant was charged by bill of information filed April 11, 1996, with three counts of armed robbery; however, counts two and three were dismissed and count one was amended to include the victims from counts two and three on April 23, 1998.  Also, the March 26, 2003 report regarding defendant's competency to proceed to trial provides that defendant reported "several arrests in the past, to include items such as battery, robbery, armed robbery, and other serious criminal involvement."

In addition, the sentence is in line with a similarly situated offender.  In State v. Stewart, 03-920 (La. App. 5 Cir. 1/27/04), 866 So.2d 1016, 1027-1028, writ denied, 04-0449 (La. 6/25/04), 876 So.2d 832, this Court held that the defendant's forty-seven-year sentence as a second felony offender was not constitutionally excessive where the underlying offense was distribution of cocaine.  In Stewart, the defendant claimed that he was probably a schizophrenic in need of psychiatric help and drug treatment.  In rejecting defendant's claim, this Court pointed out that the videotape of the undercover drug transaction and the defendant's providing his phone number to the undercover officer indicated that the transaction was not an isolated incident of drug distribution.  Further, this Court observed that defendant had a prior conviction for possession of cocaine.  The Stewart court observed that, although there have been cases where defendants in similar situations have received lighter sentences, the sentence imposed was within the statutory range and was thirteen years less than the maximum the defendant could have received.  As such, Stewart concluded that the sentence was not an abuse of the trial court's discretion.

As in Stewart, we find that the trial judge did not abuse his discretion when imposing the enhanced sentence, which was thirty years less than the maximum sentence defendant could have received.  On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial judge abused his broad sentencing discretion.  State v. Smith, 01-2574 (La. 1/14/03), 839 So.2d 1, 4.  Under the circumstances in this case and after considering the jurisprudence,

defendant's sentence does not constitute an abuse of discretion. This assignment lacks merit.[27]

If petitioner is now arguing that his sentence is excessive under Louisiana law, that claim is not cognizable in this federal proceeding. As noted previously, federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, this Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law.

If petitioner is arguing that his sentence is excessive under the Eighth Amendment of the United States Constitution, that argument has no merit. In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that

---

[27] State v. Smith, No. 05-KA-203, at pp. 12-15; State Rec., Vol. II of VI. The Louisiana Supreme Court denied petitioner's related writ application without assigning additional reasons. State v. Smith, 936 So.2d 195 (La. 2006) (No. 2006-KO-0248); State Rec., Vol. II of VI.

successful challenges to the proportionality of punishments should be exceedingly rare." Id. (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992). Moreover, when evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses." Id.

In the instant case, petitioner was sentenced for distribution of cocaine as a second offender to a term of thirty years imprisonment. His predicate offense, armed robbery, involved a serious and inherently dangerous crime. Moreover, for the following reasons, it cannot be questioned that his current offense, which involved narcotics distribution, is also particularly grave.

In a case involving a life sentence for distribution of heroin, a similarly insidious and pernicious drug, the United States Fifth Circuit Court of Appeals held:

> A life sentence for the crime of distribution of heroin serves substantial state interests in the same manner that state interests were served by a life sentence for recidivism in Rummel. The state could reasonably treat heroin distribution as a serious crime equivalent to crimes of violence. It could conclude:

> . . . The drug seller, at every level of distribution, is
> at the root of the pervasive cycle of drug abuse.
> Measured thus by the harm it inflicts on the addict,
> and, through him, upon society as a whole, drug
> dealing in its present epidemic proportions is a grave
> offense of high rank.

> State v. Terrebonne, [364 So.2d 1290, 1292 (La. 1978)], quoting
> Carmona v. Ward, [576 F.2d 405 (2nd Cir. 1978)].

Terrebonne v. Blackburn, 646 F.2d 997, 1002 (5th Cir. 1981).   The Fifth Circuit also noted that

drug distribution is a particularly serious offense due to the other crimes to which it often leads:

> "More significant, of course, are the crimes which drug traffickers
> engender in others. ... The addict, to meet the seller's price, often
> turns to crime to 'feed' his habit.  Narcotics addicts not only account
> for a sizable percentage of crimes against property; they commit a
> significant number of crimes of violence as well."

Terrebonne, 646 F.2d at 1002 (quoting Terrebonne, 364 So.2d at 1292).

In his concurring opinion in Harmelin v. Michigan, 501 U.S. 957 (1991), a case

involving possession of cocaine, Justice Kennedy similarly noted the gravity of drug offenses:

> Possession, use, and distribution of illegal drugs represent one of the
> greatest problems affecting the health and welfare of our population.
> Petitioner's suggestion that his crime was nonviolent and victimless,
> echoed by the dissent, is false to the point of absurdity.  To the
> contrary, petitioner's crime threatened to cause grave harm to society.
>      Quite apart from the pernicious effects on the individual who
> consumes illegal drugs, such drugs relate to crime in at least three
> ways:  (1) A drug user may commit crime because of drug-induced
> changes in physiological functions, cognitive ability, and mood; (2)
> A drug user may commit crime in order to obtain money to buy
> drugs; and (3) A violent crime may occur as part of the drug business
> or culture.

Id. at 1002 (citations and quotation marks omitted).

The United States Fifth Circuit Court of Appeals has noted that <u>Rummel v. Estelle</u>, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." <u>Gonzales</u>, 121 F.3d at 943. In <u>Rummel</u>, the United States Supreme Court had upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in <u>Rummel</u> falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

<u>Gonzales</u>, 121 F.3d at 943 (footnote omitted).

In light of the finding in <u>Rummel</u> that a *life* sentence was not excessive for the relatively minor offenses involved in that case, this Court has no hesitation in concluding that petitioner's enhanced sentence of thirty years imprisonment under the more serious circumstances here is not grossly disproportionate. <u>See</u> <u>Stewart v. Stalder</u>, Civ. Action No. 06-1807, 2007 WL 1890706, at *11-13 (E.D. La. June 28, 2007) (Berrigan, J.) (upholding a forty-seven year sentence for a second offender convicted of distribution of cocaine); <u>Chatman v. Miller</u>, Civ. Action No. 05-1481, 2005 WL 3588637, at *7-8 (E.D. La. Nov. 9, 2005) (McNamara, J.) (upholding a thirty year sentence for distribution of cocaine within one thousand feet of a school or park); <u>Smith v. Leblanc</u>, Civil Action No. 03-2194, 2004 WL 551215, at *9 (E.D. La. Mar. 18, 2004) (Berrigan, J.)

(upholding a twenty-two year sentence for distribution of $20 worth of crack cocaine).  In that the

sentence is not grossly disproportionate, this Court's "inquiry is finished. " <u>Gonzales</u>, 121 F.3d at

942.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus*

relief filed by Willie Smith be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation contained in a magistrate judge's report and recommendation within 10 days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)

(en banc).

New Orleans, Louisiana, this twentieth day of April, 2009.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**